*********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour, and the briefs and oral argument before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and conclusions, and, upon reconsideration, the Full Commission rejects the Opinion and Award of Deputy Commissioner Baddour and enters the following Opinion and Award.
 *********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. At all times relevant to these claims, an employer-employee relationship existed between plaintiff, Furnell Peaks, and Duke University.
3. This case originated from an injury at work that plaintiff suffered as a result of a fall on May 12, 1998.
4. Defendants admitted plaintiff's right to compensation on a Form 60 dated September 10, 1998, and have been paying disability benefits to plaintiff at the rate of $427.98 per week since the date of the accident.
5. As a result of his injuries from the accident on May 12, 1998, plaintiff has received extensive medical treatment, which is on-going. This has included a total replacement of plaintiff's right knee that was performed in October 1998.
6. Defendants have paid for all necessary medical treatment arising directly from the accident of May 12, 1998.
7. On or about August 14, 1999, plaintiff suffered a dislocated left shoulder when his right knee or leg gave way, and he fell. That injury required surgery on his left shoulder.
8. Defendants initially refused to pay for the medical expenses related to the injury to the left shoulder, and on October 29, 1999, plaintiff filed a Form 33 requesting a hearing as to whether the injury to his left shoulder was a consequence of the injuries and resulting disabilities that he suffered from the accident of May 12, 1998.
9. The parties subsequently reached an agreement regarding the injury to plaintiff's left shoulder. As a result of that agreement, defendants assumed responsibility for future treatment on plaintiff's left shoulder, and plaintiff withdrew his request for a hearing.
10. Defendants have subsequently paid for further evaluation and treatment of plaintiff's left shoulder. *Page 3 
11. In the summer of 2003, defendants paid for plaintiff to participate in a "work hardening" program at the Durham Exchange Club Industries, Inc.
12. Plaintiff alleges he sustained a fall on February 9, 2006 when his right knee or leg gave way. As a result of this fall, plaintiff suffered injuries to his right hand and wrist, for which he has needed medical attention.
13. Plaintiff requested that defendants cover his medical treatment for his right hand and wrist, arising from the fall in February 2006, and defendants have denied coverage for that injury.
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Supplemental Medical Records
 (c) Plaintiff's Exhibit 1: March 30, 2006 Letter to Delphine Goines with accompanying treatment note and return receipt
 (d) Plaintiff's Exhibit 2: Form 33 filed April 21, 2006
 (e) Plaintiff's Exhibit 3: Form 60 dated May 5, 2006
 (f) Plaintiff's Exhibit 4: Form 33R dated June 21, 2006
 (g) Plaintiff's Exhibit 6: Medical Records from Urgent Care of February 9, 2006
 (h) Plaintiff's Exhibit 7: Medical Records from Duke Sports Medicine Clinic/Duke Orthopaedics concerning plaintiff's right hand and wrist
 (i) Plaintiff's Exhibit 8: Medical Records from Dr. Robert J. Wilson from *Page 4 
October, 2003 through the present
 (j) Plaintiff's Exhibit 9: Medical Records from Dr. Thomas Vail from September, 1998 through the present
 (k) Plaintiff's Exhibit 10: Medical Records from Dr. Leslie Phillips from January, 2006 through the present
 (l) Plaintiff's Exhibit 11: Medical Records from Dr. Robert E. Winton from January, 2006 through the present
 (m) Plaintiff's Exhibit 12: Medical Records from Dr. Carol Epling from June, 2003 through the present
 *********** ISSUES
(a) Whether plaintiff's fall on February 9, 2006 was caused by, or a natural and direct result of, plaintiff's original compensable injury on May 12, 1998?
(b) If so, to what benefits, if any, is plaintiff entitled?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 56 years old.
2. Before plaintiff was injured at work in May, 1998, plaintiff had worked a total of 25 years at Duke University. At the time of his original injury, plaintiff was a supervisor in patient transport. *Page 5 
3. In about 1970, plaintiff suffered an injury to his right leg resulting in having his knee cap or patella removed. However, the lack of a knee cap in his right leg did not cause him any problems in performing his duties at Duke University for 25 years.
4. Following his work-related injury in 1998, not only did plaintiff have a total right knee replacement, he also suffered on-going problems with his low back, with pain going into the right buttock and down his leg. Plaintiff continues to have on-going pain and stiffness for which he takes prescription pain medications on a daily basis, including Percocet and Oxycontin.
5. Since his right knee replacement in October, 1998, plaintiff has had on-going problems with his right leg. He cannot straighten the leg all the way out, and if the leg does straighten all the way, he experiences excruciating pain. When he experiences this pain, the leg will often give out or collapse on him. Many times he is able to catch himself when the leg gives out, but a couple of times a year he does suffer falls from the leg giving out.
6. Because of the problems with his right leg, plaintiff goes up or down steps, one step at a time. When he is going up the steps, he steps up with his left leg and then brings up his right leg. When he is going down steps, he steps down with his right leg, supporting his weight on his left leg as he is doing this.
7. Dr. T. Parker Vail performed the total knee replacement on plaintiff's right knee, and provided follow-up treatment in the years after that surgery. The records from Dr. Vail were admitted as plaintiff's Exhibit #9. Those records confirm that plaintiff reported difficulty going down and up stairs, and that he experienced very substantial pain if the leg were straightened all the way.
8. About a month before plaintiff's fall and injury while employed by defendant on May 12, 1998, plaintiff was seen in the Orthopaedic Clinic for his knee, where he reported that *Page 6 
recently when he stepped down from a step, he experienced a little bit of a hyperextension. Plaintiff indicated that he did not fall, but that he was concerned about possible damage to his artificial knee.
9. Plaintiff testified that before his injury in May, 1998, he had no problems with is right leg giving way and falling as a result of that. Plaintiff's wife confirmed that before May, 1998, plaintiff's right leg did not cause him any significant problems and she could not ever recall him falling due to his leg giving way. However, after his injury and after his knee replacement, she indicated that it is fairly frequent that his knee would give way, but most of the time he is able to catch himself and does not fall.
10. On at least three occasions over the last several years, plaintiff has fallen as a result of his right leg giving way when he has been out in public. Two of these incidents occurred in front of his mother's house and the other when he was walking for exercise at Duke's West Campus.
11. In August, 1999, plaintiff got up from the couch in his den at his home, turned to the left to go toward the kitchen, and fell because his right leg gave way. He tried to catch himself and prevent the fall by reaching out with his left hand and arm. When he did his left shoulder popped out or dislocated as he fell to the ground.
12. The injury to plaintiff's left shoulder was serious enough that it required surgery. While defendants initially denied coverage for the left shoulder injury, after the filing of a request for a hearing, defendants accepted liability for future medical treatment. Defendants have paid for further treatment on the shoulder, including a second surgery in 2001, performed by Dr. Speer.
13. On February 9, 2006, plaintiff went out the door of the kitchen to his home to go into the garage and get in his car. There are two steps from the kitchen down into the garage. He *Page 7 
was proceeding to go carefully down those steps backwards, one step at a time, as he always does. By going down backwards he can get some support by holding on to the door. As he stepped back with his right foot to put it on the bottom step, it extended or straightened all the way out and he felt severe pain in his knee and up his right leg into his buttocks. His leg then gave way and he fell backwards. He put out his right hand to cushion the blow and landed hard on the floor. He immediately felt pain in his right hand and wrist. He lay on the floor for a bit, then crawled to the steps and was able to push himself up when he went back into his house.
14. When plaintiff's wife got home, he was experiencing pain and swelling in his hand and she insisted that he get some treatment for his right hand and arm. She carried him to Duke Urgent Care.
15. At Duke Urgent Care, plaintiff was seen by Dr. Chanhthevy Chai. In her deposition, Dr. Chai confirmed that she entered on the treatment note, as related to her by plaintiff, that he had surgery to his knee and had complications after that. Plaintiff also reported to Dr. Chai that he was going down garage steps, stepped backwards, lost his balance and fell on cement floor at around 12 p.m.
16. Dr. Chai indicated that as a result of her examination and an x-ray of plaintiff's right wrist, she concluded that there was probably a small fracture at the base of the thumb, and generally a sprain of his wrist. She placed plaintiff's thumb and wrist in a cast and recommended that plaintiff seek treatment from an orthopaedist.
17. On February 10, 2006, the day after his fall, plaintiff was seen at the Duke Orthopaedic Clinic. The history of present illness recorded in that treatment note is as follows:
 Furnell Peaks is a 55-year-old male who has had recent right total knee arthroplasty by Dr. Vail. He was going down some steps yesterday evening and felt his knee give way and he fell landing *Page 8 
somewhat backwards in trying to stop his fall with his right outstretched hand. He is having pain about the dorsum of his right wrist.
18. John Lohnes, the physician's assistant who saw and evaluated plaintiff at the orthopaedic clinic, confirmed that plaintiff reported that his knee had given way and that he fell backwards and landed on his out-stretched right arm to try to stop this fall, and he had immediate pain and swelling.
19. On February 23, 2006, plaintiff was seen in the Orthopaedic Clinic for his knee problems. He again reported to physician's assistant Covington that he fell on February 9th when his knee hyperextended.
20. Plaintiff explained that what he means when he uses the word hyperextended is when he attempts to straighten his leg all the way and experiences pain. He indicated that by using the word hyperextended, he does not mean that his leg actually bends in the wrong direction. He indicated that it is the pain from the straightening of his right leg which he refers to as hyperextension, that occurred right before he fell backwards off of the steps into his garage.
21. Plaintiff indicated that as of the date of the hearing before the deputy commissioner that he continued to experience significant pain and limitations with his right hand and wrist, and that he normally wears a brace on his hand to help stabilize it.
22. Plaintiff's fall while going down the steps to his garage on February 9, 2006, was caused or contributed to by his right knee and leg giving way, a problem that only became significant for him after his work-related injury of May, 1998, and the total right knee replacement that he had as a result of that injury.
23. On March 30, 2006, counsel for plaintiff sent the claims adjuster for defendants a letter by certified mail, return receipt, explaining that Mr. Peaks fell on February 9, 2006, because *Page 9 
his right knee gave way. That letter requested that defendants assume responsibility for the injury and treatment to plaintiff's right wrist and hand. Accompanying that letter was a copy of the Orthopaedic Clinic note from February 23, 2006, which was the only treatment record available at that time. The letter from plaintiff's counsel was received at the office of the claims adjuster, as shown by the return receipt.
24. On April 21, 2006, due to defendants not assuming responsibility for the medical treatment to plaintiff's right wrist and hand as they had with plaintiff's left shoulder injury that occurred in 1999, a Form 33 was filed on behalf of plaintiff seeking compensation for the medical expenses arising from the injury to his right wrist and hand, and also seeking attorney's fees for defendants' refusal to provide the medical benefits. That request by plaintiff resulted in the hearing of April 24, 2007. The Full Commission finds that defendants' defense of plaintiff's claim was unreasonable.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The injury that plaintiff suffered to his right hand and wrist on February 9, 2006, when he fell because his right knee and leg gave way, is a natural consequence from his compensable work-related injury of May, 1998; and therefore likewise arises out of his employment and is compensable. Starr v. Charlotte Paper Co., 8 N.C.App. 604, 611,175 S.E.2d 342, 347 (1970); Everett v. Well Care Nursing Services,180 N.C.App. 314, 636 S.E.2d 824 (2006).
2. Defendants are required to provide all reasonable and necessary medical treatment *Page 10 
that may effect a cure, provide relief, or lessen plaintiff's period of disability for plaintiff's right hand and wrist injuries that he suffered on February 9, 2006. N.C. Gen. Stat. § 97-25.
3. Defendants have unreasonably defended this action and refused to provide plaintiff with medical benefits to which plaintiff is entitled under the Workers' Compensation Act. Therefore, in the discretion of the undersigned, plaintiff's counsel is entitled to reasonable attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for all reasonable and necessary treatment that may effect a cure, provide relief or lessen plaintiff's period of disability, arising from the injury to plaintiff's right hand and wrist that he suffered on February 9, 2006. This shall include the treatment that plaintiff has already received, as well as any future treatment that is necessary.
2. Dr. David Ruch who, along with Physician's Assistant Lohnes, has evaluated and treated plaintiff for his right hand and wrist injury, is designated as plaintiff's primary treating physician for purposes of the injury to the right wrist and hand, and defendants shall pay for all evaluation, treatment, and medication prescribed by him.
3. In addition to paying for the medical treatment for plaintiff's right hand and wrist injury, defendant shall pay a reasonable attorney's fee to plaintiff's counsel for the time spent litigating this matter. Plaintiff's counsel is directed within ten days to submit an itemized affidavit of the time that has been spent on this litigation regarding the right wrist and hand injury, such that a determination can be made of the reasonable amount of fees to be awarded. *Page 11 
4. Defendants shall bear the costs.
This the 20th day of October, 2008.
 S/___________________
 BUCK LATTIMORE
 COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1